## ARTHUR N. HART v. WILLIAM H. BROCKWAY.

*Dictated testimony—Corporate obligations—Individual liability.*

1. The Supreme Court severely censures the practice of putting the statements of counsel into the mouths of witnesses.

2. Where railway directors have collected subscriptions and taken aid notes to be used in building the road and in discharging existing obligations, an individual director cannot apply such funds, collected by himself, to the payment of his own personal share of any obligation made jointly with the rest.

3. A corporate obligation will not sustain an action against an individual.

4. New trial on reversal is ordered pro forma, though the declaration be fatally defective, if error is not assigned on the defect.

Errror to Ingham. (Gridley, J.) May 14.—June 3.

ASSUMPSIT. Defendant brings error. Reversed.

*Erastus Peck* and *I. P. Christiancy*, for appellant.

*Huntington & Henderson* for appellee.

CAMPBELL, J. Plaintiff, as assignee of James Gallery, recovered judgment against defendant for failure to indemnify Gallery from liability on a note for $4500, on which nine persons, who were directors of the Northern Central Michigan Railroad Company, but as individuals were originally liable, and of which all but two-ninths had been paid, and Gallery held for the balance. Error is brought by defendant.

So far as can be gathered from the very confused record in this case, the circumstances out of which the claim of plaintiff is alleged to have arisen were these: The Northern Central Michigan Railroad Company proposed building a road from Jonesville to Lansing, and before anything had been done to place stock or raise money in the usual way, the parties interested made various preliminary outlays and incurred expenses by raising amounts on their own responsibility, for which they joined in a joint and several note, several times renewed. On February 17, 1870, the persons then directors (Brockway being then one, and replacing Mr. Crawford) executed a note for $4500, payable to Samuel V. Irwin, or order, at four months, with ten per cent. interest after maturity, held by the National Exchange Bank of Albion, of which Irwin was president. The various persons so interested endeavored to obtain aid in various ways, from townships and individuals, and had secured and were securing personal aid notes to a large amount. Not seeing the way to a completion of the road by their own resources, efforts were made to get some other parties to help them, and by defendant's action some persons, representing the owners of the Lake Shore & Michigan Southern Railroad, entered into negotiations, which ended in a proposal that J. Condit Smith, who acted in that behalf, would undertake to complete the road of the Northern Central, would put it in condition for ironing, (with some exceptions) pay the debts, and transfer to Smith the stock and property, and secure him in the control. Such an agreement was finally made with Mr. Smith, but on this record the date of it is disputed, and that date became important. Brockway, at a meeting of the

directors, in August, 1871, agreed with them that if they would transfer to him the subscriptions and aid notes, and use their efforts to get more, he would assume and perform their obligations to Mr. Smith, and give security to do so. There is a contest whether the Brockway contract was made after or on the occasion of executing the Smith contract. Plaintiff claims that it was in order to get the directors to execute the Smith contract, and hand over the notes to the treasurer, that Brockway made his offer, which was accepted. This suit is brought on the claim that, as an inducement to the directors to enter into the Smith contract and hand over the securities in their hands, Brockway promised if they would do so to pay the $4500 note and keep the signers indemnified against it; and it is claimed also that these subscriptions and aid notes were obtained for the purpose of paying that personal note, as well as for work on the road.

It further is brought into the record that Brockway made provision for paying all of this $4500 note except two-ninths, being the shares of A. N. Hart and Gallery.

The bank finally sued Gallery, and he filed a bill to enjoin the suit, making the bank and Brockway defendants. This bill was dismissed and judgment at law passed against him. He brought it into this Court for review, and the judgment was affirmed. *Gallery v. National Exchange Bank* 41 Mich. 169. It was held that the directors could not use the funds of the corporation to pay their private debt, and that if such an agreement was made it would be void. It was also held that the bank could not be bound to discharge Gallery unless it accepted a new debtor in his place, which was not done.

The present suit is brought for indemnity, Gallery having paid the bank judgment. Upon the trial, the court below admitted a large amount of testimony upon matters which seem to us foreign to the record, and much of that was apparently so much more the statements of counsel put in the mouths of witnesses than those of witnesses themselves, as to be grossly improper and censurable. The case, however, can be readily disposed of upon the real issues.

The only theory on which plaintiff could recover must be

upon an individual promise made to him by defendant as a personal and sole obligation, upon a legal and valuable consideration. No such contract is alleged, and there is no testimony that any such contract was ever made.

Looking first at the consideration, it is shadowed forth rather than distinctly alleged in this wise : It is claimed in the declaration that the $4500 note was given to raise money for the construction of the railroad, and for no other purpose ; and that on the day of the August meeting the several directors had in their several custody certain subscription notes to the amount of $160,000, given by various persons in their respective neighborhoods, which were "each and all given for the purpose of aiding in, and were intended to aid in, (and to furnish means for), the payment of said $4500 note, and for the construction of said railroad ;" that said directors "had and controlled" $150,000 of these notes, and had the right to, and it was intended they should, apply enough of them to pay that $4500 note; that defendant proposed that if they would enter into the Smith contract, and would surrender to the treasurer for defendant, or to defendant himself, these notes, he would build the road, pay its debts, and pay this $4500 note. A further set of averments allege a special application to Gallery, as one of the directors, to do likewise, and that defendant would build the road, pay the debts, and the $4500 note, and save Gallery harmless as aforesaid.

This being the consideration, the declaration avers that defendant promised each and all of the directors that if they would turn over the subscription notes he would pay the $4500 note, and save each and all harmless, and that they all did so, Gallery including his own subscription note for $500.

It will be observed that, apart from the $4500 note, the whole consideration on both sides related to the corporate interest and to nothing else. It will be seen further that the notes to be turned over to defendant were subscription notes made for the corporation itself, to aid in its construction ; and that, if intended to provide for the $4500 note, it was not to do so for each director out of the notes obtained from his

own neighbors, but to do so as a common burden. It is apparent, from the averments in the declaration, that there was nothing in the facts which could give Gallery a right to use these notes in his hands as the basis of a personal and separate undertaking, and that doing so would be a palpable fraud on the corporation, and illegal. But the consideration is so set out that the various promises and purposes cannot be separated, and the arrangement, if made with the directors as individuals, can only be treated as a joint one.

It is also clear, as held in *Gallery v. National Exchange Bank*, that if this $4500 note, was a personal one, which was not a corporate liability, the directors could not lawfully use corporate assets to provide for their own security.

Furthermore, the contract which defendant was to make, and the one which was to be made with Smith, were corporate and not personal contracts, and except as to this $4500 note, related entirely to corporate liabilities and interests, and it is not averred that the subscription notes, whether intended to provide for that note or not, were to be used except as corporate assets. In other words, the action of the directors contemplated and aimed at was corporate and not personal.

The testimony fails to show any different state of things. There is nothing in any way tending to show any but corporate action, and there is nothing tending to show that the subscription notes could lawfully be used for any purpose but road construction. Neither is it either averred or shown that the corporation had ever assumed or become liable on the $4500 note. All the notes which defendant received, he received under contract from the corporation itself; and from the facts relied on by plaintiff on the trial, it is impossible to deduce any but a corporate contract, whether covering this bank obligation or not. So that, if it should be admitted that defendant was bound to pay it, and indemnify the signers against it, the corporation would be the party entitled to complain of the breach.

There is nothing in the allegations, and nothing in the proof, which could justify a recovery as on a separate contract with Gallery, and the court erred in holding otherwise.

We do not think it necessary to discuss the other questions involved, as we can see nothing which could change the case beneficially for plaintiff. The declaration is fatally defective, but no error is assigned on it; and in reversing the judgment with costs, we must go through the form of ordering a new trial.

SHERWOOD and CHAMPLIN, JJ. concurred. COOLEY, C. J. did not sit.