[No. 10590. Department One. January 8, 1914.]

## GERMAN-AMERICAN STATE BANK, *Appellant*, v. SOAP LAKE SALTS REMEDY COMPANY *et al.*, *Respondents.*[1]

CORPORATIONS—STOCK — SUBSCRIPTIONS — PAYMENT IN PROPERTY—OVERVALUATION—LIABILITY TO CREDITORS. Where an insolvent corporation conveyed all its assets to a clerk of one of its officers, who subscribed for all the stock of a reorganized company, transferring the assets to it in full payment of the stock, which she transferred proportionally to the stockholders of the old company, such stockholders are subscribers to the stock of the new company, and having paid but a nominal consideration for their stock, they are liable to creditors on their unpaid stock subscriptions, on the trust fund theory, requiring stock to be paid for in money or money's worth.

BANKS AND BANKING—REPRESENTATION—OFFICERS—ADVERSE INTERESTS—NOTICE. Where the president and cashier of a bank extended credit to, and permitted overdrafts by, an insolvent corporation in which they were interested as stockholders with full knowledge of its affairs, in an action on their unpaid stock subscriptions for the benefit of the bank as principal creditor, it cannot be claimed that the bank was estopped by the knowledge of its president and cashier, who were adversely interested and who had failed to give notice of conditions to any of the other trustees or officers of the bank.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered February 6, 1912, dismissing an action on contract, upon granting a nonsuit. Reversed.

*Voorhees & Canfield*, for appellant.

*Vanderveer & Cummings* and *H. McC. Billingsley*, for respondents.

CROW, C. J.—Action by German-American State Bank, a corporation, upon two promissory notes, executed by the Soap Lake Salts Remedy Company, a corporation, and to

[1]Reported in 137 Pac. 461.

recover from C. H. Clodius, A. O. Kuck and J. W. McBurney and H. E. Christensen, their unpaid subscription to the capital stock of the defendant corporation. The defendant corporation interposed a demurrer to the complaint, which was overruled, and after its failure to further plead, plaintiff claimed a default. The remaining defendants answered separately. At the close of plaintiff's evidence, a nonsuit was entered as to each and all of the defendants. The plaintiff has appealed.

Pending the appeal, H. E. Christensen died testate, and J. W. McBurney, his executor, has been substituted as respondent. As McBurney is a respondent in his personal capacity, we will refer to Christensen as a respondent in all matters which, prior to his decease, affected him.

About June, 1907, a corporation known as the Soap Lake Salts & Oil Company, hereafter called the oil company, was organized, with a capital stock of $50,000, respondents J. W. McBurney, C. H. Clodius, O. A. Kuck, and H. E. Christensen being a portion of the stockholders. After continuing for about a year, it proved an unprofitable concern, doing a business of about $500 a month, with operating expenses largely in excess thereof. It incurred a number of liabilities which it could not pay, including an indebtedness of about $1,500 to the appellant bank, in the form of an overdraft. The stockholders and trustees thereupon determined to organize a new corporation, to be known as the Soap Lake Salts Remedy Company, hereafter called the remedy company, one of the respondents herein. The remedy company was incorporated for $200,000, and one Miss M. E. Wagner, a stenographer and employee of one of the respondents, subscribed for its entire capital stock, with the exception of about six shares, which were subscribed by the incorporators. All assets of the oil company were conveyed to Miss Wagner, who forthwith conveyed the same to the remedy company in full payment of her stock subscription. Stockholders in the oil company thereupon surrendered their

stock in that company to Miss Wagner, and received in exchange a proportionate amount of stock in the remedy company. Respondents Clodius and Christensen, president and cashier of the appellant bank, as such, extended credit to the oil company by permitting the overdraft above mentioned. This overdraft seems to have been assumed by the remedy company, which increased it until it reached $2,104.08. On November 24th, 1908, the remedy company, to decrease this overdraft, executed and delivered to the appellant bank its promissory note for $2,000, the same being one of the notes upon which this action is based. Thereafter, the remedy company again overdrew its account with the appellant bank, and on December 10, 1909, in settlement, executed and delivered to the appellant its second promissory note for $1,840.55, the same being the second note upon which this action is based. The assets which the oil company conveyed to Miss Wagner, and which she in turn conveyed to the remedy company, included 153 acres of land in Grant county, of the value of about $6,000, subject to an unpaid purchase money mortgage for $5,000; and further consisted of certain personal property, of a total value not exceeding $5,000.

It is conceded that the remedy company has ceased doing business; that it has lost the real estate in a foreclosure proceeding; that its other assets are practically valueless; that it is insolvent; and that appellant cannot recover on its notes, unless it can recover from the respondent stockholders on their unpaid stock subscriptions. It is not necessary to enter upon a minute statement of the facts, or detail the number of shares of stock held by each respondent in the remedy company. It may be mentioned that stock of the face value of about $76,000 was turned into the treasury of the remedy company to be held and sold as treasury stock. We are satisfied the evidence was sufficient to show that respondents were subscribers to their stock; that they acquired the same with full knowledge of all the transactions and dealings in-

volved in the organization of the remedy company, and that nothing more than a nominal consideration was paid by them for the stock which they now hold. Their liability to creditors of the insolvent corporation, upon their unpaid stock subscriptions, is well established by former rulings of this court. *Adamant Mfg. Co. v. Wallace*, 16 Wash. 614, 48 Pac. 415; *Dunlap v. Rauch*, 24 Wash. 620, 64 Pac. 807; *Davies v. Ball*, 64 Wash. 292, 116 Pac. 833; *Grady v. Graham*, 64 Wash. 436, 116 Pac. 1098, 36 L. R. A. (N. S.) 177; *Lantz v. Moeller*, 76 Wash. 429, 136 Pac. 687. The evidence in this case convinces us that the subscribed capital stock now held by respondents, has never been paid either in cash or in property of an equivalent value.

In the *Adamant Mfg. Co.* case, *supra*, the late Chief Justice Dunbar said:

"It must necessarily follow, for the protection of creditors who dealt with these corporations, that the stock subscribed for must be paid in cash or in property of an equivalent value. In other words, the corporation must be in the actual condition which it represents itself to be, in financially. If it were allowed to hold itself out as having a capital stock of $100,000, when in reality the capital stock, which is and must be, under the theory of the law, assets in the hands of the corporation, is worth only one-half that amount, the corporation is to that extent doing business under false colors, and is obtaining credit upon the faith of an asserted estate which is purely fictitious. And where, by any arrangement between the shareholders and the corporation, the stock is issued as fully paid up, when in fact it has not been paid to the full amount of its face value, but has been paid in property of a fictitious or inflated value, a court of equity will compel a payment by the stockholder for the benefit of the creditor who has dealt with the corporation relying upon the asserted value of its assets to the full amount or face value of the stock. Such is almost the universal holding of the courts of the present day. See *First National Bank v. Gustin etc. Mining Co.*, 42 Minn. 327 (44 N. W. 198, 18 Am. St. Rep. 510); Taylor, Private Corporations, § 702. The latter authority lays down the rule as follows: 'To issue

shares as fully paid up for property known to the corporation and the shareholder receiving them to be materially below their par value, is a fraud on creditors, for whose benefit the shareholder to whom the shares are issued may be compelled to make up the difference.' "

In view of the respondents' statements, we find it unnecessary to discuss their liability under the facts shown. In their answering brief, they say:

"Now it is not contended here, nor has it ever been contended, that Miss Wagner paid the full face value of her stock. It is not contended here, nor has it ever been contended, that the assets of the old company were worth $200,000, or anything like such sum. The trade-marks, the patents and the good will had a purely speculative value, and it was the hope of the stockholders in the old company that the sale of the 76,000 shares of treasury stock, would give the new company a working capital to carry its enterprise to success. It is not contended here, nor has it ever been contended, that the property transferred to the new company had a present worth of $200,000; but it is contended that no fraud was intended or accomplished upon any of the creditors of the Soap Lake Salts Remedy Company, and particularly the appellant bank."

It is conceded that the respondents Clodius and Christensen were respectively president and cashier of the appellant bank. As they were also stockholders in the remedy company, the respondents contend that they had full knowledge of its organization, history, and assets and condition; that, through them, the appellant bank had such knowledge, as their knowledge was that of the bank; that the bank did not rely upon the stock subscriptions in extending credit; that it has not been defrauded, and that it cannot recover in this action. In their brief, respondents say:

"The respondent's answer frankly stated that the old company could not meet its obligations, and that the sole object of the new organization was to obtain funds from the sale of stock to pay off the debts of the old company and continue the business. The entire method, the objects and

purposes of the new organization were given in detail. The sole defense urged was that the appellant in extending credit to the new company had full knowledge of all the facts, and had not only consented to the reorganization and consented to look to the new company for the indebtedness of the old, but that in extending credit to the new company it had agreed to rely 'entirely upon the real and existing assets, and upon the prospects of the Soap Lake Salts Remedy Company, and not upon any contingent liability, real or supposed, of the stockholders of the Soap Lake Salts & Oil Company, who had accepted the stock of the Soap Lake Salts Remedy Company under the circumstances hereinbefore mentioned and described.' "

Respondents rely on the rule that, if a person, in dealing with a corporation, extends credit to it, knowing that its capital stock, has been issued in exchange for property of less than its par value, he cannot thereafter recover from the individual stockholders.

Appellant, while conceding the rule that, whatever is known to the managing officers of the corporation, is known to the corporation itself, insists upon an exception which it now invokes, to the effect that, when an officer of a corporation is engaged in perpetrating a fraud on his corporation or is dealing with it for his own personal profit or interest, the knowledge which he possesses will not be imputed to the corporation. There was evidence sufficient to show that Clodius and Christensen were active participants in the organization of the remedy company; that they knew all transactions by which its stock was issued in exchange for the comparatively worthless assets of the old corporation; that, having thus participated, and having such knowledge, they became stockholders in the remedy company and continued at all times to hold their stock; that they were stockholders in the old company, and that they, as president and cashier of the appellant bank, permitted the overdrafts. There was also evidence that the bank had seven other trustees, two of whom testified that they had no knowledge of the overdraft or the notes of the remedy company. No showing

was made as to what knowledge, if any, the other trustees had, nor is there any evidence that any of the trustees other than Clodius and Christensen knew whether the stock subscriptions of the remedy company were paid or unpaid. It is difficult to conceive that any board of trustees would have approved or ratified the overdraft, had they been familiar with the financial condition of the remedy company. Clodius and Christensen were interested in securing funds for the remedy company to insure its continuance in business. Being thus interested, their conduct as president and cashier of the bank, in permitting the overdraft, cannot now be taken advantage of by themselves or other stockholders of the remedy company without further proof of knowledge on the part of the bank than is disclosed by the record. Upon the facts shown, their knowledge, which they obtained as interested parties and stockholders in the remedy company, will not be imputed to the appellant bank, or deprive it of the right to seek relief by enforcing the statutory liability of the subscribing stockholders of the remedy company.

Although the facts involved are not entirely similar, we regard the announcement of this court in *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225, as applicable to this case. We there said:

"The respondent will be presumed to know that an officer in a corporation, however extensive his apparent authority may be, may not bind his principal in a matter in which he is adversely interested. Mooney could not at the same time act for himself and for his principal, without the full knowledge and free consent of the principal. *O'Conner Min. etc. Co. v. Coosa Furnace Co.*, 95 Ala. 614, 19 South. 290, 36 Am. St. 251; *Gallery v. National Ex. Bank*, 41 Mich. 169, 2 N. W. 193, 32 Am. Rep. 149. An officer who receives the note or other obligation of a corporation in payment of the personal debt of an officer with whom he deals does so at his peril. The reason is that such a transaction is not in the regular course, but is presumptively *ultra vires*."

We are not unmindful of the fact that the overdrafts continuously appeared on the bank books; that the trustees had

access to these books; that all of the trustees did not testify, and that only two did testify, denying knowledge of the affairs of the remedy company; yet there is no evidence that Clodius and Christensen communicated to the bank, or any of its officers, the knowledge which they possessed. On the contrary, the indications seem to be, and the natural presumption under the circumstances would be, that they did not do so, and that the other officers of the bank, if they had notice of the overdrafts, were relying on the $200,000 subscribed capital stock of the remedy company as a trust fund to secure all of its liabilities.

Upon the record, we hold there was sufficient evidence to sustain a recovery against the respondent stockholders, in the absence of any defense or evidence to the contrary. The motion for a nonsuit should have been denied as to each and all of the defendants.

The judgment is reversed, and the cause is remanded for a new trial.

MOUNT, CHADWICK, GOSE, and PARKER, JJ., concur.