[No. 22653. Department Two. January 16, 1931.]

ELECTROMATIC COOLING COMPANY, *Appellant*, v. MILNE-RYAN-GIBSON, INCORPORATED, *Respondent*.[1]

*William H. Pemberton* and *Roy D. Robinson*, for appellant.

*Hyland, Elvidge & Alvord, Tucker & Tucker*, and *J. B. Olmsted*, for respondent.

FULLERTON, J.—The Electromatic Cooling Company is a corporation organized under the laws of this state. The Milne-Ryan-Gibson, Inc., is also a corporation. The first of the corporations became indebted to the second for services performed for it and materials furnished to it, in the sum of $460.10. An action was begun to recover on the indebtedness, in which action a receiver was appointed for the Electromatic Cooling Company. After the appointment of

[1]Reported in 294 Pac. 1113.

the receiver, creditors' claims against the corporation were presented to him, which the court found to be valid, to the amount of $4,283.84.

The receiver was unable to find any physical property belonging to the corporation. He found, however, that the corporation had been organized with a capital stock of forty-nine thousand dollars, divided into 490 shares of the par value of one hundred dollars each, found, from the records of the corporation coming into his possession, that the corporation had been organized by one P. J. Swanson and one A. S. Knudsen, and found evidence from which he concluded that these persons had subscribed for the entire issue of the capital stock of the corporation, each subscribing for one-half thereof, for which stock they had not fully paid.

The receiver, later on, petitioned the court, in the cause in which he was appointed receiver, praying that a citation be issued, directed to Swanson and Knudsen, requiring them to appear on a day certain, and show cause why the claims presented to him as claims against the corporation should not be allowed, and why they should not pay to the receiver, on their unpaid stock subscriptions, a sufficient sum to meet the claims against the corporation, together with such further sum as might be necessary to pay the costs of the receivership, a reasonable sum as compensation for the services of the receiver, and a reasonable sum to compensate his attorneys.

The citation was issued as prayed for, and the parties cited appeared in response to the citation. The receiver had set out in his petition the facts on which he relied for a recovery, and on these the parties took issue. It was thereupon agreed, by the respective parties to the proceeding, that the cause should be

heard upon its merits; and that, if it was found that the cited parties were liable as subscribers to the stock of the corporation, a judgment might be entered against them severally, to the extent of obligations of the corporation.

A trial was then had upon the merits of the petition, at the conclusion of which the trial court found that the valid unpaid obligations of the corporation amounted to the sum of $4,783.84, that the reasonable value of the services of the receiver was two hundred fifty dollars, and that the reasonable value for the services of his attorneys was a like sum. It was further found that Swanson had paid nothing on his stock subscription, and that Knudsen had paid on his subscription $3,150.00. Based on the findings, it entered the following judgment:

"It Is Ordered and Adjudged that the Receiver herein, F. H. Elvidge, have judgment against the defendants A. S. Knudsen and P. J. Swanson, and each of them, in the sum of $4,783.84, and costs, that said judgment shall bear interest from this day, and that there shall be credited on the judgment against A. S. Knudsen the sum of $3,150.00."

The judgment debtor, Swanson, alone appeals.

It is first assigned that the court erred in finding that the incorporators of the Electromatic Cooling Company, P. J. Swanson and A. S. Knudsen, had subscribed for all of the capital stock of the corporation. To an understanding of the question involved, something of the facts pertaining to it must be stated. Swanson discovered a device which was thought to be new, intended to make more serviceable electric refrigerators of the kind commonly used in the household. He had applied for a patent on the device. While the application was pending, Swanson sold a one-half interest in the device to Knudsen, and the

two, as hereinbefore stated, organized the Electromatic Cooling Company, for the purpose of manufacturing electric refrigerators.

The proceedings pertaining to the organization of the corporation, and the subsequent transactions of the corporation, were somewhat carefully recorded in the records and minutes, and form a part of the evidence introduced at the trial of the cause in the court below and brought to this court. In the minutes kept of the first meeting of the stockholders, only Swanson and Knudsen appear as stockholders, and the minutes recite that "a stock subscription agreement was also produced showing that the capital stock of the corporation had been duly subscribed."

Later on, Swanson and Knudsen made a written proposition to the corporation, in which they offered to transfer to the corporation all their right, title, and interest in Swanson's invention, in consideration of the transfer to them of all of the capital stock of the corporation, as fully paid capital stock. The corporation, by a resolution, accepted the proposition, directing that the stock be issued by the corporate officers in accordance therewith. In this resolution, and in the recorded minutes of the meeting, it is recited that the stock issued in pursuance thereof is to be deemed "as fully paid, the same to be the stock which has heretofore been subscribed for by each of said parties." In the instruments executed to evidence the transfer of the Swanson device to the corporation, it is again recited that the consideration for the transfer was all of the capital stock of the corporation "as fully paid for."

The receiver was unable to find the subscription list to which the minutes of the corporation referred, but did find an unsigned list, prepared for two signatures, in which the stock was equally divided. At the trial,

the appellant produced a subscription list, in which it appeared that the incorporators had subscribed for fifty shares of stock each, and the appellant testified that it was the stock subscription to which the minutes of the corporation referred. But it bears no date, and was not filed or kept with the other papers of the corporation, and the trial court held that it did not overcome the proofs introduced by the receiver. In its holding we concur.

It is next urged that the court erred in refusing to find that the stock was fully paid for by the incorporators, even conceding that they had subscribed for the entire issue of the corporation's capital stock. But it is the rule, in this state at least, that the capital stock of a corporation must be paid for in money, or in money's worth, and that the estimate of value placed upon property by the stockholders or trustees of a corporation, which is transferred to the corporation in payment of capital stock, is not conclusive upon the courts. *Dunlap v. Rauch,* 24 Wash. 620, 64 Pac. 807; *Davies v. Ball,* 64 Wash. 292, 116 Pac. 833, Ann. Cas. 1914B 750; *German-Am. State Bank v. Soap Lake Salts Remedy Co.,* 77 Wash. 332, 137 Pac. 461.

It is true that, where the corporation is suing a stockholder for unpaid subscriptions, the courts will not inquire too nicely into values when the payment has been made in property, but where the recovery sought is for the benefit of creditors of the corporation, who have trusted it on the faith that its capital stock is what it is represented to be, a different rule obtains. As we said in *Adamant Manufacturing Co. v. Wallace,* 16 Wash. 614, 48 Pac. 415:

"Where, by any arrangement between the shareholders and the corporation, the stock is issued as fully paid up, when in fact it has not been paid to the full amount of its face value, but has been paid in

property of a fictitious or inflated value, a court of equity will compel a payment by the stockholder for the benefit of the creditor who has dealt with the corporation relying upon the asserted value of its assets to the full amount or face value of the stock. Such is almost the universal holding of the courts of the present day."

In this instance, the device transferred to the corporation had no practical value, and was neither new nor novel. Nor was it patentable. An application made by Swanson for a patent was rejected on that ground, and an amended application, which set forth additional claims, met with the same fate. Nor, as we read the evidence, did Swanson claim that it had a value equal to the face value of the capital stock of the corporation. His evidence was, in substance, that Knudsen had paid one thousand dollars into the corporation, and that the device had been turned over to the corporation for the difference between that sum and ten thousand dollars, the par value of the stock for which, he contended, they had actually subscribed.

The conditions here presented are, moreover, not the usual conditions found in instances where a corporation accepts property in payment of its capital stock. Usually, the trustees of the corporation have no direct personal interest in the transfer. In this instance, it was not so. Swanson and Knudsen owned the device as individuals. They were also the sole stockholders and trustees of the corporation. As individuals, they offered the device to the corporation for a stated consideration, and, as officers of the corporation, they accepted the offer. While the minutes recite that they, as officers, did so "after a thorough discussion of said proposition and a consideration of the objects and purposes of this corporation," we think it may be reasonably doubted whether the prop-

osition was ever, at any time, in danger of rejection. The transaction, as it occurred, may not necessarily spell fraud, but, obviously, it invites scrutiny where its perpetrators are seeking to escape liability to the unpaid creditors of the corporation.

The principal creditor of the corporation was the Sam Hunter Company, Inc. One Hunter on its behalf had paid into the corporation some three thousand dollars, and the corporation he represented had performed services for it, under a written contract. There was a dispute in the evidence, whether the sum so paid was an advancement to the use of the corporation, or was paid for the purchase of stock. The trial court held it to be an advancement and, in our opinion, the evidence justifies the holding.

Other matters discussed in the arguments require no special consideration.

The judgment is affirmed.

MITCHELL, BEALS, MAIN, and MILLARD, JJ., concur.