JAMES GALLERY v. THE NATIONAL EXCHANGE BANK OF ALBION.

*Use of corporation funds by the directors—Bank officers cannot release the liability of debtors to the bank.*

Directors cannot use the funds of the corporation in payment of a note made by them to the president of the corporation as payee, and for its benefit.

A third person's promise to pay a note and release the makers from responsibility does not lessen their liability unless the creditor consents.

Where a note is made by the directors of one corporation and is transferred to another, and one of the makers is also payee and indorser, and is president of both corporations, he is not in a position to consent for the corporation creditor to any arrangement which will release his own personal liability or that of his co-directors, and impair the creditor's security.

The officers of a bank cannot consent to any arrangment by which the security of the bank on paper due to it, will be impaired.

Error to Eaton. Submitted June 4. Decided June 17.

ASSUMPSIT. Defendant brings error.

*Crane & Montgomery* for plaintiff in error. The manager and superintendent of a bank can do almost anything that the board of directors are authorized to do, Grant on Banks and Banking, 553; he can take better security on paper that has matured and been dishonored,

41 MICH.—22.

*Merch. Nat. Bank v. Mears,* Thompson's Nat. Bank Cases, 353; *First Nat. Bank v. Nat. Exch. Bank,* ib., 124; notice to the president is notice to the bank, Morse on Banks & Banking, 113; *Porter v. Bank of Rutland,* 19 Vt., 410.

*Rienzi Loud* for defendant in error. An agreement by the president and cashier of a bank that an indorser shall not be liable on his indorsement is not binding on the bank, *Bank of U. S. v. Dunn,* 6 Pet., 51; *Bank of Metropolis v. Jones,* 8 Pet., 16; *Hodge v. Nat. Bank,* 22 Gratt., 51; *Cochecho Nat. Bank v. Haskell,* 51 N. H., 116; Morse on Banks, 134; Ang. & Ames on Corporations, § 301; the president of a bank cannot bind it by acts, admissions, declarations and representations that are not within the scope of his authority and of his ordinary duties, id., § 309, n. 2.

MARSTON, J. The National Exchange Bank commenced an action of assumpsit to recover a balance claimed to be due on a promissory note made by Gallery and nine others, payable to the order of Samuel V. Irwin and endorsed by the latter.

The makers of this note were all directors of the Northern Central Mich. R. R. Co. at the date thereof. Samuel V. Irwin, one of the makers and the payee therein named, was president of the railroad company at the time the note was given, and was also at the same time and continued to be president of said bank. Irwin kept his office at the bank and gave its business and loan department his personal attention.

No question was made as to the proper transfer of this note to the bank for value before maturity.

None of the makers of this note received any consideration therefor. It was given, in part at least, in renewal of other like notes, and the money obtained therefrom was to be and was used solely for railroad purposes.

Evidence was introduced tending to prove that this

note, and those in renewal of which it was given, were not to be paid by the makers thereof, but only from the assets or funds of the railroad company when collected; also that after this note was given an agreement was entered into in August or September, 1871, by and between the makers thereof, acting as directors of the railroad company, that a certain contract should be entered into with one Smith in reference to the construction of the railroad; that at the same time, [Brockway] one of the directors and makers of this note, in consideration of the execution of such contract with Smith, agreed to take certain subscriptions and notes received by these directors to aid in the construction of the railway, and prepare the road-bed, pay this note and release his co-makers from all liability or responsibility thereon, which offer was accepted and a large amount of subscription notes turned over for Brockway's and the railroad company's benefit, amongst which was a note for $500 given by defendant Gallery which he turned over with the other railroad notes' then in his possession. At the time this agreement was made Irwin was present, and it is claimed assented thereto.

Evidence was also given tending to show that some understanding existed under which the makers of this note should only be held liable, each for one-tenth the amount thereof, and that several of them had paid their full proportion thereof.

After the evidence was all introduced, the court on motion struck out all that had been introduced on the part of defendants, and submitted to the jury the question as to how much remained due and unpaid upon this note.

The evidence offered and received to prove an agreement made between the makers of this note, that they should not be personally liable in accordance with the terms thereof, and that it should be paid only out of assets of a corporation of which they were directors, was clearly incompetent. This is too clear to admit of question.

The note was given to the corporation and the makers could not thus pay their own note from the funds of their creditor. The benefit to the corporation from such a course is not apparent.

It is equally clear that the promise of Brockway made in September, 1871, to pay this note, and release the makers thereof from all responsibility, could in no way affect or lessen their liability to the bank. All such agreements require the consent of the creditor, and where this is wanting the obligation remains. The only ground upon which it is claimed the bank could be bound or affected by such an agreement, was placed upon the fact that Mr. Irwin, the President, who it was claimed was superintendent and manager of the bank, was present, and consented to the arrangement.

Mr. Irwin was one of the makers and also an endorser upon this note. If the agreement made was valid and binding upon the bank, then he also was released from all liability thereon. Mr. Irwin was not acting at the time of this agreement, nor was he present as President of the bank, representing and looking out for its interests, but acting as President and a director of the railroad company. Even however had he assumed to act for and represent the bank, being liable as maker and endorser, he could not consent to his own release and that of his co-makers, and bind the bank thereby. It would be for his private interests to accept of the agreement of Brockway, and thus, if it were valid, be released from all liability thereon. As President of the bank it would have been his duty to reject Brockway's proposition so that the security which the bank had, should not be impaired by the release of any of the makers. That he could not act in such a double and antagonistic capacity is well settled in this State. *Stevenson v. Bay City*, 26 Mich., 46.

Even if we concede that an agreement such as is claimed was made, yet we do not see how the interests of the bank could be affected thereby. It might admit

of some question whether Brockway's agreement to thus pay the debt of others would be valid under the statute of frauds. Even if the proper officers of the bank had been present and acquiesced in what was done, yet it is not claimed that the effect thereof could have been to discharge the makers and accept Brockway in lieu thereof. The bank was not a party to this arrangement at all, and if knowledge of this agreement was shown to have been brought home to the bank, which we think was not the case here, and that the bank silently acquiesced therein, the result would in no way be changed.

The position which counsel for plaintiff in error insist upon in this case, was passed upon in *Lewis v. Westover*, 29 Mich., 14, where the facts made a much stronger case than we have here, and yet it was held the endorser of the note was not discharged.

The judgment must be affirmed, with costs.

The other Justices concurred.