[No. 19818. Department One. June 25, 1926.]

CENTRALIA STATE BANK, *Respondent*, v. W. H. HACKETT
et al., *Appellants*.[1]

[1] PAYMENT (28)—EVIDENCE—SUFFICIENCY. Defendants' claim of payment of a written guarantee to a bank is not established by evidence of payments upon other obligations which the defendants had separately made.

[2] BANKS AND BANKING (17)—REPRESENTATION—OFFICERS—NOTICE AS BINDING BANK. Where the president and owner of a bank is dealing with it in his own interests in guaranteeing, with a third person, advances to be made to the company in which he was interested, his knowledge that the guaranty was different from what it purported to be on its face is not to be imputed to the bank.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered June 29, 1925, upon findings in favor of the plaintiff, in an action upon a contract of guaranty, tried to the court. Affirmed.

*Delos Spaulding, James A. Stinson,* and *Hayden, Langhorne & Metzger,* for appellants.

*C. D. Cunningham,* for respondent.

FULLERTON, J.—This action was brought by the respondent, Centralia State Bank, against the appellants, W. H. Hackett and W. B. Keir, on a written instrument of guaranty, of which the following is a copy:

"Centralia, Washington.
"Feb. 3rd, 1921.

"For value received, we hereby guarantee payment of any and all indebtedness now owing or which may hereafter be owing or become due from Tilton River Bit. Coal Co. owned by Centralia State Bank of Centralia, Wash., its successors or assigns, to the extent

[1]Reported in 247 Pac. 463.

of Five Thousand Dollars ($5,000.00) whether or not said indebtedness or any part thereof be otherwise guaranteed or secured, and upon the failure to pay the amount thereof when due by the said Tilton River Bit. Coal Co. we jointly and severally promise to pay the same on demand, together with interest thereon to Centralia State Bank, or to the holder or holders of said indebtedness or any part thereof, and waive notice of the acceptance of this guaranty and of any and all indebtedness at any time covered by the same. This is intended as a continuing guarantee and requires no notice to the undersigned and shall remain in force until written notice of its discontinuance shall be received by Centralia State Bank.

"W. H. Hackett
"W. B. Keir
"A. U. Dann."

In its complaint, the bank alleged the execution of the guaranty, its subsequent delivery to the bank, and that the bank had advanced to the coal company named therein, on the faith of the guaranty, a sum of money in excess of $5,000, which that company had not paid, and which, because of its insolvency, it was unable to pay. In their answer to the complaint, the appellants admitted the execution of the guaranty, but denied that it had been delivered to the bank with their knowledge or consent as an operative agreement, or as an agreement by which they undertook to guarantee to the bank any advancements made by it to the coal company. By an affirmative defense, they set up what they claimed to be the real purport of the instrument. They alleged that they were officers of, and stockholders in, the coal company, and that Dann was the president and manager of the respondent bank; that Dann had purchased certain shares of stock in the coal company and had paid for the stock by deeding certain lands to the company, the title to which had proved defective, thereby preventing the coal company from real-

izing on the lands; that Dann, pending the perfection of the title (to quote from the answer as it is epitomized in the appellants' brief):

"agreed with appellants and said coal company to negotiate a loan for said coal company and to carry the same until such time as the title to said lands might be perfected, and to effectuate such loan said Dann took from said coal company two notes, bearing date January 21, 1921, for and in the respective sums of $2,000 and $3,000, payment whereof was by appellants guaranteed by endorsement of guaranty thereof upon the back of said notes, said Dann agreeing likewise to guarantee payment thereof and to negotiate said notes, and, in the event of failure of title to said lands, to ultimately pay said notes, which payment would constitute a partial payment for his stock in said coal company. Deposit of money on said notes was to be made in respondent bank by said Dann and the same to be made available for said coal company upon delivery of said notes in the prosecution of its affairs. Said Dann experienced difficulty in negotiating said notes, and on February 3, 1921, said coal company having checked against its funds in the respondent bank, in anticipation of deposit therein to its credit, of moneys procured upon said notes, overdrew its account in said bank and on said day, to-wit, February 3, 1921, said Dann represented unto these appellants that it would be necessary for him to handle the notes aforesaid through respondent bank, and represented unto these appellants that he, said Dann, being president and manager of respondent bank, said bank could not accept the said notes bearing endorsement and guaranteed by said Dann, and thereupon requested from appellants that he be relieved from his agreement aforesaid to guarantee payment of said notes with these appellants upon negotiation thereof, and indicated to appellants that said notes without endorsement by said Dann were acceptable to respondent bank, and, in order to carry out the agreement theretofore had between appellants and said Dann relative to said lands and payment for said Dann's

stock in said coal company, the said Dann proposed unto these appellants that they enter into a separate agreement, whereby said Dann was to be liable unto appellants and said coal company for amounts paid by it and them upon said notes, in event of failure of such title to said lands. This being done in consideration that said Dann would be relieved from guaranteeing payment of said notes by direct guarantee thereof as aforesaid, and to effectuate this agreement [the guaranty] was executed, and upon execution thereof was delivered into the hands of said Dann for safekeeping. The said [guaranty] was executed as a transaction between appellants and said Dann, and not in any wise to secure an extension of credit from respondent unto said coal company.''

There was also a plea of payment to the bank of the sum guaranteed by the instrument.

The evidence on the part of the respondent bank supported the allegations of its complaint. It was shown that the instrument of guaranty was executed late on the day of which it bears date; that it was, on the morning of the next banking day, delivered to the cashier of the bank by Dann, and by the cashier duly noted on the bank's books and placed in the vaults of the bank in the receptacle where like instruments were kept; that the bank thereafter made advancements to the company in a sum in excess of the amount of the guaranty; and that the coal company did not repay the advancements, or any part thereof, afterwards becoming insolvent and unable to pay.

When the appellants offered to prove the matters alleged in their affirmative answer, the court excluded the testimony. It is said that the court did so, because the evidence tended to vary the terms of a contemporaneous written instrument in violation of the parol evidence rule, and an argument is made attempting to show that it erred in so ruling. But, as we read

the record, this was not the ground upon which the court based its ruling. It ruled, as we understand the record, that the bank would not be bound by the agreement, unless the directors of the bank, or some officer thereof, other than Dann, had knowledge of it at the time it was delivered to the bank or at the time the advancements were made; and excluded the testimony, on the admission of the appellants that they would be unable to so show that any other of the bank's officers had such knowledge.

[1] The appellants also challenge this ruling of the trial court, but we think it without error. While the authorities seem not to be uniform on the question, we have followed the rule that, when an officer of a corporation is dealing for his own personal profit or interest, knowledge which he possesses will not be imputed to the corporation. This we held in *German-American State Bank v. Soap Lake Salts Remedy Co.*, 77 Wash. 332, 137 Pac. 461. The facts of the case are complicated and need not be stated in detail here. It is sufficient to say that certain officers of the bank participated in the transactions which gave rise to the obligations, and the question was whether the knowledge they so acquired could be imputed to the bank. Concerning the question, we used this language:

"It is conceded that the respondents Clodius and Christensen were respectively president and cashier of the appellant bank. As they were also stockholders in the remedy company, the respondents contend that they had full knowledge of its organization, history, and assets and condition; that, through them, the appellant bank had such knowledge, as their knowledge was that of the bank; . . . Appellant, while conceding the rule that, whatever is known to the managing officers of the corporation, is known to the corporation itself, insists upon an exception which it now invokes, to the effect that, when an officer of a corpora-

tion is engaged in perpetrating a fraud on his corporation or is dealing with it for his own personal profit or interest, the knowledge which he possesses will not be imputed to the corporation. There was evidence sufficient to show that Clodius and Christensen were active participants in the organization of the remedy company; that they knew all transactions by which its stock was issued in exchange for the comparatively worthless assets of the old corporation; that, having thus participated, and having such knowledge, they became stockholders in the remedy company and continued at all times to hold their stock; that they were stockholders in the old company, and that they, as president and cashier of the appellant bank, permitted the overdrafts. There was also evidence that the bank had seven other trustees, two of whom testified that they had no knowledge of the overdraft or the notes of the remedy company. No showing was made as to what knowledge, if any, the other trustees had, nor is there any evidence that any of the trustees other than Clodius and Christensen knew whether the stock subscriptions of the remedy company were paid or unpaid. It is difficult to conceive that any board of trustees would have approved or ratified the overdraft, had they been familiar with the financial condition of the remedy company. Clodius and Christensen were interested in securing funds for the remedy company to insure its continuance in business. Being thus interested, their conduct as president and cashier of the bank, in permitting the overdraft, cannot now be taken advantage of by themselves or other stockholders of the remedy company without further proof of knowledge on the part of the bank than is disclosed by the record. Upon the facts shown, their knowledge, which they obtained as interested parties and stockholders in the remedy company, will not be imputed to the appellant bank, or deprive it of the right to seek relief by enforcing the statutory liability of the subscribing stockholders of the remedy company.''

To the same effect is *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225, wherein we said:

·"The respondent will be presumed to know that an officer in a corporation, however extensive his apparent authority may be, may not bind his principal in a matter in which he is adversely interested. Mooney could not at the same time act for himself and for his principal, without the full knowledge and free consent of the principal. *O'Connor Min. etc. Co. v. Coosa Furnace Co.,* 95 Ala. 614, 19 South. 290, 36 Am. St. 251; *Gallery v. National Ex. Bank,* 41 Mich. 169, 2 N. W. 193, 32 Am. Rep. 149. An officer who receives the note or other obligation of a corporation in payment of the personal debt of an officer with whom he deals does so at his peril. The reason is that such a transaction is not in the regular course, but is presumptively *ultra vires.*"

[2] There would seem to be but little question, that Dann was dealing in his own interest when he entered into the transaction with the appellants. He had purchased stock in the coal company, in payment for which he had deeded property to the corporation to which he was without title. He was obligated to make good the consideration agreed to be paid for the stock, and the transaction with the appellants was an effort on his part to make good the consideration. Under the rule cited, therefore, his knowledge, that the instrument sued upon was something different than it purported on its face to be, cannot be imputed to the bank. · The evidence did not substantiate the plea of payment. The appellants, it is true the record discloses, have paid large sums in satisfaction of the obligations of the coal company to the bank. But these were paid upon notes of the coal company which the appellants had separately indorsed; we find no evidence tending to show that anything has been paid upon the obligation here sued upon.

The cause was tried to the court below, sitting without a jury, and is triable here *de novo* on the record.

For this reason we find it unnecessary to notice other errors assigned. They in no way affect the principal question upon which the case turns, however meritorious they might prove to be were a different conclusion to be reached upon that question.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, ASKREN, and MITCHELL, JJ., concur.