ELY-WALKER DRY GOODS COMPANY, A CORPORATION, RESPONDENT, v. J. W. KARNES, APPELLANT.*

Springfield Court of Appeals. September 17, 1928.

*Corpus Juris-Cyc References: Bankrupcy, 7CJ, section 378, p. 242, n. 35; Contracts, 13CJ, section 747, p. 664, n. 60; Pledges, 31Cyc, p. 839, n. 71; p. 867, n. 55; p. 869, n. 75, 81; p. 881, n. 11.

*Hal H. McHaney* and *W. G. Bray* for appellant.

*Charles Liles* and *Henry C. Walker* for respondent.

COX, P. J.—Action upon a promissory note with petition in the usual form. The answer was in two counts. The first count was a plea in bar and admitted the execution of the note, then alleged that he was surety on the note for the Karnes Mercantile Company, a corporation, the principal in the note. That said mercantile com-

pany placed with plaintiff a number of notes held by it as collateral security for the payment of this note. That these collateral notes were merely endorsed by the Karnes Mercantile Company and delivered to plaintiff to be held as collateral security and there was no agreement of any kind authorizing plaintiff to sell these collateral notes but that plaintiff did sell them without the knowledge or consent of the Karnes Mercantile Company and that plaintiff thereby unlawfully converted these notes to its own use. That these collateral notes were of much greater value than the amount due on this note and were sold for a much less sum and that defendant is entitled to a credit on the note in suit for the actual value of the collateral notes alleged to have been wrongfully sold by plaintiff which value far exceeds the amount due on the note and pleads these facts in bar to a recovery by plaintiff.

The second count of the answer was a counterclaim and alleged the same facts set out in the first count and in addition alleged that in May, 1922, the Karnes Mercantile Company went into bankruptcy. That these collateral notes were listed as a part of the assets of the bankrupt. That on August 31, 1922, the referee in bankruptcy ordered the trustee to sell the right, title and interest of the bankrupt in all notes in which it had an interest at the date of filing its petition in bankruptcy and that sale was made to John M. Karnes and bill of sale given him by the trustee. That John M. Karnes conveyed his interest in these notes to defendant. That plaintiff wrongfully sold all these collateral notes in October, 1922. That the reasonable value of these notes was $4195.66 in excess of the amount then due on the note in suit alleged that he had been damaged in said sum of $4195.66 by the wrongful act of plaintiff and asked judgment for that amount against the plaintiff.

The reply was a general denial.

After the evidence was all in the court sustained a demurrer asked by defendant to the evidence of plaintiff in its action on the note and also sustained a demurrer asked by plaintiff to the evidence of defendant on his counterclaim and thus held that neither could recover. Defendant appealed.

There is very little dispute as to the material facts. The note sued upon was dated February 1, 1921, due October 25, 1921, for the sum of $5000. Payments made by the Karnes Mercantile Company prior to filing its petition in bankruptcy May 17, 1922, amounted to $2877.39. That left the amount due plaintiff on the note on that date $2122.61 and accumulated interest which we have not computed. When this note was given, the Karnes Mercantile Company endorsed, and then deposited with plaintiff as collateral security for this note, other notes of the face value of $6621.37 and plaintiff had these notes in its possession as collateral security for the payment of the note in suit at the time the petition in bankruptcy of the Karnes

Mercantile Company was filed on May 17, 1922. At the first creditors' meeting in the bankruptcy proceeding held on June 3, 1922, an order was made by the referee directing the trustee to sell all the real estate, personal property, notes and accounts of the bankrupt mentioned in his petition. A sale was made under this order but not approved as to the notes and accounts. On August 31, 1922, plaintiff filed its claim based upon this note with the referee in bankruptcy for allowance against the bankruptcy estate. Prior to that time plaintiff's attorney had made some effort to find a purchaser for the collateral notes held by plaintiff. He found none and was then instructed by plaintiff to credit the $5000 note with $1000 and take over the collateral notes, which meant, of course, that plaintiff sold or attempted to sell these collateral notes to itself for $1000. We might stop right here to say that when these notes were deposited with plaintiff as collateral, it was not given any authority to sell them and hence its action in attempting to sell to itself conveyed no title. When this note of $5000 was presented for allowance on August 31, 1922, it showed all the credits of payments made and then added a credit of $1000 which resulted from the sale of these notes to itself. On the same day the referee made an order in reference to plaintiff's claim, which, omitting formal parts, is as follows: "Ely & Walker having filed in the office of the referee a proof of debt against the estate of the above-named bankrupt in the sum of $1907.32 and said proof of debt having been filed and due deliberation had and after hearing Charles Liles, attorney for claimant in support of said claim, it is ordered that the said claim be and the same is hereby allowed in the sum of $1907.32 and that said claimant retain for his own use, account and benefit the aforesaid collateral notes." Mr. Liles, attorney for plaintiff, testified that he prepared this order and it was entered by the referee after a consultation between the referee, the attorney for the trustee and himself in the presence of the trustee. The attorney for the trustee did not testify. The trustee testified that he had no recollection of said consultation and had no recollection of ever having any conversation with the referee about it.

On the same day, August 31, 1922, the referee made and entered of record a second order of sale which recited that "all the property belonging to the bankrupt had been sold except the interest of the bankrupt in and to the notes and accounts due said estate and an offer of $1500 for said notes and accounts has been made by J. M. Karnes of Senath, Missouri, and it appearing that said offer is the highest and best price obtainable, it is ordered that the trustee be and he hereby is directed to sell, convey and assign all the right, title and interest of the bankrupt in and to the notes and accounts *due the bankrupt at the time of the filing of its petition* and the

trustee is further directed to execute proper bill of sale upon receipt of said sum of $1500. . . ." (Italics are ours.)

The trustee executed the bill of sale as directed and recited therein that he conveyed to John M. Karnes "All the right, title and interest of the bankrupt in and to all the notes and accounts belonging to said estate or in which said estate had an interest at the time of the filing of its petition in bankruptcy, said notes and accounts being set forth in the schedules of the bankrupt filed in said cause.

It is on this order of sale by the referee and the bill of sale executed by the trustee to J. M. Karnes and the assignment of said J. M. Karnes to defendant that he bases his claim of title to said notes and his right to maintain an action by counterclaim in this case for the alleged conversion of them by plaintiff. There is no contention that this order and bill of sale was not regular and we are of the opinion that it conveyed title to the purchaser and the assignment by the purchaser to defendant conveyed title to him. On October 2, 1922, plaintiff sold one collateral note of the face value of $765.40 for $400. October 20, 1922, it sold the remainder of the collateral notes of the face value of $5855 for the sum of $1200. The purchaser of the $765.40 note collected it in full. The purchaser of the other notes testified at the trial that he had collected on them a total of $3649.69 and he had remaining unpaid notes amounting to $1815.95, some of which he thought were good.

There is no contention that the pretended sale of its collateral notes by plaintiff to itself for $1000 or the order of the referee in bankruptcy, evidently made without notice to defendant or other interested parties and without any evidence being heard as to the value of these notes was of any force or gave plaintiff any right to sell these notes. We are clearly of the opinion that plaintiff did not have such right and that its sale of them amounted to a conversion. Respondent states in its printed argument that: "The respondent urges that it was not necessary for the court or the jury and that it will not be necessary for this court to determine whether the appellant obtained title to the collateral notes by the purported sale of the collateral notes by the trustee in bankruptcy to the appellant's father and from the appellant's father to the appellant or whether the respondent obtained title to the collateral notes through the order of the referee in bankruptcy. The question of law was presented to the court under the undisputed evidence in this case as to whether the appellant or pledgor of the collateral notes could complain of the sale or even of the wrongful conversion of said collateral notes by the respondent or pledgee until after he, the pledgor or his co-maker of the principal note, had tendered the amount due and owing to the plaintiff upon the principal note or showed a willingness on their part to pay and discharge the principal note."

Respondent rests its entire contention on the proposition that defendant cannot maintain an action in any form to recover damages for the conversion of the collateral notes by plaintiff until after he had tendered to plaintiff the amount due on the principal note. If defendant were seeking to secure a return to him of these collateral notes that position would be sound. Even if defendant were not seeking a return of the collateral notes, yet, if it were in the power of plaintiff, the holder of the collateral, to return them to defendant, the position of respondent would be sound, but where it is shown, as it was alleged and proven in this case, that the collateral notes had been disposed of by plaintiff wrongfully, and plaintiff had, by its own wrong, placed itself in a position where it could not return the collateral on payment of the principal note, then a tender was not a pre-requisite to the right to maintain an action for their conversion. In that situation, the question of the amount due on the principal note is purely a question of proof in establishing the amount of damages defendant suffered by reason of the wrongful act of plaintiff in converting to its own use the collateral notes. The conversion of these collateral notes by plaintiff did not deprive it of its right to collect the balance due on the principal note. It was entitled to that in any event, but its wrongful conversion of the collateral made it chargeable with the actual value of said collateral and if that value equalled the amount due on the principal, it could be offset under a plea in bar by defendant as alleged in the first count of his answer. If the value of the collateral was less than the amount due on the principal note, then under the pleadings in this case, since defendant did not ask for an accounting and offer to pay what might be found to be due, if anything, after charging the plaintiff with the value of the collateral converted, the defendant could not recover at all and plaintiff should have had judgment for the balance due on the principal note. Defendant's right to any relief under the answer in this case depended upon his proving that the value of the collateral at the time of its conversion was equal to or greater than the amount then due on the principal note. Failing in that he had no defense to the note in suit. Defendant in his counterclaim set up in the second count of the answer recognized his liability to plaintiff for the balance due on the principal note and only asked for such sum as damages as the value of the collateral alleged to have been converted by plaintiff should exceed the amount due on the note. All this could be determined and the rights of the parties settled without the useless formality of a tender before suit of the amount due plaintiff on the principal note. If defendant's contention was correct and he could have so proven at the trial, then the day plaintiff converted the collateral, it thereby became indebted to defendant in a sum greater than defendant was then indebted to plaintiff and there can be no sound reason in either law or morals

why defendant should be required to pay plaintiff the amount due on the note before he could avail himself of the right to demand from plaintiff that it account to him for what it owed defendant by reason of its wrong in converting to its own use the collateral it held which was defendant's only reliance against his liability to plaintiff. When one party to a contract has placed himself in such position that performance on his part is impossible, a tender of performance by the other party to the contract is unnecessary. We think the authorities support the conclusion we have reached in this case. [Westlake & Button v. City of St. Louis, 77 Mo. 47, 51; Richardson v. Ashley, 132 Mo. 238, 33 S. W. 806; Hurt v. Cook, 151 Mo. 416, 430, 52 S. W. 396; Walker v. Cooper, 97 Mo. App. 441, 448; Hornsby & Monroe v. Knorpp, 207 Mo. App. 302, 320-321, 232 S. W. 776.]

We do not think the cases of McClintock v. Central Bank of Kansas City, 120 Mo. 127, 24 S. W. 1053; Nevius v. Moore, 221 Mo. 330, 120 S. W. 43, and Amick v. Empire Trust Co., 296 S. W. 798, chiefly relied upon by respondent are in conflict with our holding in this case nor do we find any case holding that where the pledgee has wrongfully disposed of the property pledged and put it beyond his power to return on payment of the debt, an offer in the answer to allow credit for the amount due plaintiff on the amount due defendant from plaintiff by reason of the conversion does not put defendant in position to insist upon his rights when his claim against plaintiff equals or excels that of plaintiff against him without an actual payment or tender in money to plaintiff of the amount due the plaintiff, and we see no reason why opposing debts cannot be set off in this form of action the same as any other form of debt might be set off.

The court having directed a verdict against plaintiff on the note in suit and no appeal having been taken by it, the right of plaintiff to recover a judgment of any amount against defendant is gone. That fact, however, will not inure to the benefit of defendant. In order for defendant to recover a judgment against plaintiff for any amount on his counterclaim, he must show that the value of the collateral notes sold by plaintiff was at that time greater than the amount then due on the principal note for that is his measure of damages and in ascertaining the amount due on that note the credit of $1000 placed therein by plaintiff and representing the amount at which it at first attempted to sell these collateral notes to itself must be omitted.

The judgment will be reversed and the cause remanded for new trial on defendant's counterclaim only. *Bradley* and *Bailey, JJ.,* concur.