[No. 25345.   Department Two.   December 7, 1934.]

GUARANTY TRUST COMPANY, *as Receiver, Respondent,* v. YAKIMA FIRST NATIONAL BANK, *Appellant.*[1]

[1]Reported in 38 P. (2d) 384.

616

*Rigg, Brown & Halverson,* for appellant.
*H. A. LaBerge,* for respondent.

BLAKE, J.—November 9, 1932, plaintiff was appointed receiver of Yakima Fruit & Cold Storage Company. Within six months thereafter, it brought this action against defendant, alleging that the cold storage company became insolvent on or about December 15, 1931; that defendant, knowing of such insolvency, received payments, in amounts unknown to plaintiff, on past due indebtedness of the cold storage company; that defendant knew that, by accepting such payments, it would receive a greater proportion of its debt than other creditors similarly situated.

A demurrer to this complaint was sustained, with leave to file an amended complaint. The amended complaint was filed more than six months after November 9, 1932. It contained allegations similar to those of the original complaint above outlined, except

it set up specifically the payments that had been made by the cold storage company and the debts to which the payments had been applied.

Defendant moved to strike the amended complaint, on the ground that the action was not commenced within the time limited by chapter 47, Laws of 1931, p. 160, § 1, Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1]. The motion having been denied, defendant answered, denying generally the allegations of the amended complaint, and by way of affirmative defense, alleged that the payments received by it, which plaintiff claimed constituted preferences, were made by the cold storage company pursuant to a contract, in the nature of a joint adventure, between it and defendant.

It appears from the evidence that, for a number of years prior to July, 1931, the cold storage company was a borrower from the defendant bank. At the time mentioned, the defendant held something like $27,000 of unsecured notes of the cold storage company. At about that time, an arrangement was entered into between defendant and the cold storage company, whereby the former advanced to the latter seventy to seventy-five per cent on drafts drawn by the latter on consignees to whom it had shipped fruit and tomatoes. Upon collection of the drafts, the balances of twenty-five or thirty per cent were applied to the reduction of the unsecured notes. On December 31, 1931, the amount of the cold storage company's indebtedness had been reduced, principally by the application of the balance of the proceeds from such drafts, to $23,030.75.

The trial court found that the cold storage company was insolvent on that date; that the defendant had reasonable cause to believe that the cold storage company was insolvent; that, by accepting payments on past due indebtedness, defendant obtained (and had

reasonable cause to believe it was obtaining) a greater proportion of its indebtedness than other creditors of the cold storage company similarly situated; that, within four months prior to November 9, 1932 (the date the receiver was appointed for the cold storage company), defendant received $1,988.19, and that, between December 31, 1931, and July 9, 1932, the defendant received $2,398.12 on past due indebtedness of the cold storage company. Judgment was accordingly entered in favor of plaintiff for $4,865.65, which amount included interest on the payments from the date of payment to the date of judgment. Defendant appeals.

Appellant first assigns as error the denial of its motion to strike the amended complaint. The statute (chap. 47, Laws 1931, p. 160, § 1) provides that an action

". . . to recover a preference as herein defined may be commenced at any time within six months from the time of the filing of the application for the appointment of such trustee, receiver or other liquidating officer." Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1].

It is appellant's contention that the cause of action set up in the amended complaint is a different cause of action than that set up in the original complaint; that the former is an action at law to recover preferences, and the latter an action in equity for an accounting; that, consequently, the action set up in the amended complaint was barred by the statute.

While respondent did allege, in the original complaint, that an accounting was necessary to determine the amount it was entitled to recover from appellant, the ultimate facts upon which the right of recovery was predicated were identical in both complaints, and were set forth in almost identical language.

There was but one and the same cause of action alleged in both complaints. In *Richardson v. Carbon Hill Coal Co.,* 18 Wash. 368, 51 Pac. 402, 1046, this court said:

"The amendment relates to the same transaction and rights which were set up in the prior complaint, and while it is true, that under the ruling of this court it probably became necessary for this new allegation to be made, it was so connected with the original case and was so dependent upon the transactions alleged to have occurred in the original case, that we think it does not fall within the rule governing a new cause of action."

When the amended complaint does not set up a new cause of action, the filing relates back to the date of filing of the original complaint. 1 Bancroft's Code Pleading, § 563. And the statute of limitations, arising in the meantime, is not a bar. *Richardson v. Carbon Hill Coal Co., supra.* The motion to strike was properly denied.

The principal contention of appellant centers around the interpretation of chapter 47, Laws of 1931, p. 160, §§ 2(a), 2(b) and 3(a), Rem. Rev. Stat., §§ 5831-2, 5831-3 [P. C. §§ 4532-2, 4532-3]. Sections 2(a) and 2(b) [Rem. Rev. Stat., § 5831-2 (P. C. § 4532-2)], of that act, have recently been construed by this court to mean that a preference, given within four months of application for a receiver or trustee, is recoverable absolutely without regard to knowledge of insolvency on the part of the one receiving it; that a preference given prior to that is recoverable only when the person accepting it shall at the time have reasonable cause to believe he is receiving a preference. *Meier v. Commercial Tire Co., ante* p. 449, 38 P. (2d) 383.

On this aspect of the case, this leaves for our consideration only the question of appellant's knowl-

edge of the insolvency of the cold storage company, because it is not seriously questioned that the latter was, in fact, insolvent on December 31, 1931, as found by the trial court. Nor does it seem that appellant seriously contends that it was not chargeable with knowledge of the insolvency of the cold storage company, if certain evidence to which it objected is competent.

George H. Bradshaw was, at all times with which we are concerned, a trustee of the appellant bank. He was also president and manager of Guaranty Trust Company. The latter was trustee of a bond issue put out by the cold storage company some years before. Bradshaw, as president and manager of the trust company, had intimate knowledge of the financial condition of the cold storage company. He knew it was insolvent, because he knew that it had had to borrow money to make the interest payment due on its bonds in December, 1931. The money was borrowed from Guaranty Trust Company, itself. This was partly a loan to one of the officers of the cold storage company and partly a loan to the latter direct. But the cold storage company, in order to secure the money, was required to put up cold storage receipts for apples as collateral. This, with other facts concerning the financial condition of the cold storage company of which Bradshaw was cognizant, convinces us that he knew, even before December 31st, that it was insolvent.

Appellant contends that the knowledge thus acquired by Mr. Bradshaw of the cold storage company's financial condition is not imputable to appellant. In support of this contention, appellant cites the cases of *German-American State Bank v. Soap Lake S. R. Co.*, 77 Wash. 332, 137 Pac. 461, and *Centralia State Bank v. Hackett*, 139 Wash. 394, 247 Pac. 463. These

cases simply hold that knowledge of an officer of a bank is not imputable to the bank, where the knowledge concerns a matter in which the officer's interest is adverse to that of the bank.

There is no such situation here. There is no reason why Bradshaw could not or should not have communicated his knowledge of the insolvency of the cold storage company to the bank. His knowledge was not acquired as an officer or a stockholder of the cold storage company, and his interest in the matter was not adverse to that of the bank. This being so, his knowledge of the insolvency of the cold storage company was imputable to the bank under the general rule. *Walla Walla Oil etc. Co. v. Vallentine*, 103 Wash. 359, 174 Pac. 980; *Contractors Machinery & Storage Co. v. Stewart*, 177 Wash. 263, 31 P. (2d) 546.

With respect to § 3(a), chapter 47, Laws of 1931, p. 161, Rem. Rev. Stat., § 5831-3 [P. C. § 4532-3], appellant contends that, it being identical with § 68(a) [30 U. S. Stat. 565], of the Federal Bankruptcy Act (Title 11, U. S. C. A., § 108(a) ), it is deemed to have been adopted with the interpretation placed on the latter act by the Federal courts. It is appellant's position that, under the decisions of the United States supreme court and the Federal circuit and district courts, credits of the character made by it on the cold storage company's past due notes are "mutual credits," which it was at all times entitled to offset against the latter's indebtedness. In support of this contention, appellant cites the following cases: *Studley v. Boylston Natl. Bank*, 229 U. S. 523, 33 S. Ct. 806; *Bain v. Indiana Natl. Bank*, 64 Fed. (2d) 112; *Jandrew v. Guaranty State Bank*, 294 Fed. 530; *Coppard v. Alamo Natl. Bank*, 58 Fed. (2d) 977.

. These cases, in substance, hold that, where a bank appropriates a deposit (or the depositor draws a check on its account in favor of the bank) and offsets it against the note of the depositor, who subsequently becomes bankrupt, the transaction does not constitute a preference under the bankruptcy act.

Appellant contends that its appropriation of the hold-back or reserve on drafts to the notes of the cold storage company is no different than it would have been had such hold-back or reserve been credited to the latter's checking account and then appropriated and offset against its notes.

We think the flaw in this argument is that the hold-back or reserve on the drafts never did become a credit in the possession of the cold storage company. The transaction in each instance amounted simply to this: That, for an advance of seventy or seventy-five per cent of the face of the draft, the cold storage company relinquished all right to the balance, except to have it applied on past due indebtedness. The balance on the draft never became a credit, in the hands of the bank, to the account of the cold storage company in the sense that it would have been had it been deposited. The cold storage company had at no time the right to withdraw such balance and apply it on other obligations, as in the case of a deposit. With a deposit there is a debt owing from the bank to the depositor. So, where the depositor owes the bank on a note, there is a "mutual credit" or "mutual debt." But in the instant case, the hold-back on the drafts never became a credit in the hands of the cold storage company. It was not the application of a credit, in the bank's hands, upon the obligation of the cold storage company. On the other hand, it was, by mutual agreement, a transfer of property of the cold storage company to the bank, the proceeds of which

were applied to the former's past due indebtedness. The facts do not present a case of "mutual debts" or "mutual credits," as contemplated by chapter 47, Laws of 1931, p. 161, § 3(a), Rem. Rev. Stat., § 5831-3 [P. C. § 4532-3].

Finally, appellant suggests that under conditions of depression, such as existed in 1932, our long established rule as to what constitutes insolvency should be abandoned. The only argument in support of the suggestion is that under our rule eighty per cent of all corporations doing business in the Yakima valley were insolvent. The court has frequently been urged to abandon the rule and adopt the test of insolvency applied by the Federal courts. We do not think, however, the reason suggested warrants us from now departing from a rule so long established. We still think that the correct test of solvency is the ability to meet obligations in the ordinary course of business.

Judgment affirmed.

BEALS, C. J., HOLCOMB, MITCHELL, and STEINERT, JJ., concur.