[No. 26270. Department Two. December 14, 1936.]

A. STANG, *as Receiver, Appellant,* v. PUGET SOUND NATIONAL BANK OF TACOMA *et al., Respondents.*[1]

[1]Reported in 63 P. (2d) 373.

504

*Roberts & Skeel* and *Clayton Chapman,* for appellant.

*Guy E. Kelly* and *A. G. Laffin,* for respondents.

Tolman, J.—By this action, the appellant, as the receiver of an insolvent corporation, sought to have set aside as preferential the lien of a judgment against the corporation which was entered within four months preceding his appointment. From a judgment denying the relief sought, this appeal was taken.

Because the appellant, after having agreed with his attorney and with a committee of creditors to

prosecute an appeal, did, of his own motion, pay the judgment against him for costs and directed his attorney not to prosecute the appeal, a motion has been made to dismiss the appeal. It further appears that, after the receiver indicated his change of front, he was cited before the court which appointed him, and, after a hearing, that court found that the rights of creditors were affected by the judgment in this proceeding and the receiver was therefore directed to perfect the appeal. Moreover, from the record it appears that the judgment of which the creditors complain is of distinct financial advantage to the appellant personally. That is, his personal interests are directly opposed to the interests of the creditors whom he represents in his capacity as receiver. It is obvious that whatever was done by the receiver to forward his own interests was not binding upon the creditors, and, taking the record as a whole, we must hold that the case is properly here. The motion to dismiss is denied.

The facts are considerably involved, and because we disagree to some extent with the trial court they must be stated with some care. Prior to April, 1932, the East Tacoma Manufacturing Company, a corporation, became indebted to the respondent bank. A. Stang, who in his representative capacity is the appellant and who personally is one of the respondents, was a stockholder and an officer of the borrowing corporation, and he personally endorsed or guaranteed the notes given by his corporation to the bank. The bank also took a written guarantee from the remaining individual respondents, who were likewise stockholders of the borrowing corporation. Early in 1932, the bank was given a financial statement which showed that the book assets of the borrowing corporation were substantially in excess of its liabilities.

On April 14, 1932, the trustees of the borrowing cor-

poration entered a resolution upon the corporate records to the effect that action of some kind was necessary in order to satisfy the creditors of the corporation, and a meeting of its creditors was called. The respondent bank was advised of the action, but sent no representative to the creditors' meeting. When that meeting adjourned, those present, including the representatives of the principal creditors, immediately called upon the president of the bank and discussed the situation with him, apparently disclosing all known facts.

On April 29, 1932, the bank brought an action against the respondent Olsen for the purpose of obtaining indemnity under the written guaranty to which she was a party. Later, the remaining guarantors and the borrowing corporation were all made parties defendant to that action, and finally, on December 24, 1932, a judgment was duly entered in that action against the borrowing corporation and against each of the guarantors for the whole sum due to the respondent bank. In the judgment was a provision which reads:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event of the satisfaction of this judgment by the defendants A. Stang, A. M. Anderson, S. L. Frank and/or Mrs. A. P. Olsen or any or either of them, that such defendant or defendants so paying such judgment be subrogated to the rights of the plaintiff herein in this judgment to the extent that such defendant or defendants shall have paid or been compelled to pay this judgment."

This is the judgment, the lien of which is here attacked.

In the meantime, and while the action above described was pending, on May 7, 1932, an action was brought by a creditor of the East Tacoma Manufacturing Company against it, which resulted in an adjudica-

tion that it was insolvent, and a general receiver was appointed for it.

Thereafter and on September 1, 1932, by an agreement among the creditors (not including the respondent bank), the receiver was dismissed, and a creditors' committee was organized and placed in charge, under which Mr. Stang was appointed to conduct the business. The creditors' agreement provided, among other things, that the creditors would not take any action looking toward the collection of the amounts severally due them for a period of three years without the approval of the creditors' committee.

The affairs of the insolvent corporation were carried on by Mr. Stang under the direction of the creditors' committee until April 7, 1933. Little or nothing was paid to general creditors during this period, though perhaps the indebtedness of the corporation was somewhat reduced by payments of back wages and salaries due to employees of the corporation. Efforts were made to sell the business or to reorganize, all of which were unsuccessful; and, it appearing that the creditors' committee was making no progress in securing results for the creditors, that committee by proper application procured the appointment of appellant Stang as general receiver for the corporation on April 7, 1933.

On September 18, 1933, this action was brought against the respondent bank only. Later, on motion of the bank, the other respondents were ordered brought in and they were made parties defendant by an amended complaint filed November 1, 1933, and were duly served with process.

No payments were made by any of the individual respondents upon the judgment against the insolvent corporation and in favor of the respondent bank until

November 27, 1933, a period of more than two months after the action was brought against the bank.

The bank by its answer admits substantially all of the allegations of the complaint, except that it denies the vital allegation which reads:

"That heretofore, within four months prior to the application for the appointment of a receiver, the East Tacoma Manufacturing Company suffered to be entered against it by the defendant, Puget Sound National Bank of Tacoma, a judgment in the original sum of $10,520.24 which said judgment was entered in action No. 69633 in the superior court of the state of Washington for Pierce county entitled Puget Sound National Bank of Tacoma vs. Mrs. A. P. Olsen, et al. and there appears of record in the execution docket in Volume 45 at page 427. That said corporation did not resist the entering of said judgment and the same was never appealed from nor superceded by said corpora-. tion in any manner. That at the time said judgment was entered and long prior, the said East Tacoma Manufacturing Company was insolvent and known to be such by said defendant, Puget Sound National Bank of Tacoma."

The trial court, after an exhaustive trial, filed a memorandum opinion, which appears to find (1) that the bank had no notice of the insolvency of the corporation; and (2) that the discharge of the first receiver and the terms of the agreement, under which the creditors' committee acted, placed the corporation in a solvent condition before the judgment in favor of the bank was rendered. Also, that, as to the respondent Olsen, the action was not brought within six months from the time of the filing of the application for the appointment of the receiver, as is required by Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1]. We shall discuss each of the questions thus raised.

It is the established rule of this court that the correct test of the solvency of a corporation is its

ability to meet its obligations in the ordinary course of business. *Guaranty Trust Co. v. Yakima First Nat. Bank,* 179 Wash. 615, 38 P. (2d) 384.

That the bank had actual knowledge that the corporation here involved could not so meet its obligations, is established beyond question. The president of the respondent bank freely admitted on the witness stand knowledge of all that we have so far mentioned, but based his idea of the solvency of the corporation upon the thought that, if the stockholders had been harmonious and in agreement with one another, they might have overcome or avoided the financial difficulties which beset the corporation. The reason why the corporation could not pay in the ordinary course of business is not here important. The fact of the inability to pay is the governing condition under our rule.

The corporation being adjudged insolvent when the first receiver was appointed, presumably it would continue to be insolvent until the contrary is shown. The agreement by which the receiver was discharged and a creditors' committee placed in charge has no tendency to show a restoration to solvency. The agreement not to sue therein contained is strictly limited to suits without the consent of the creditors' committee. Nothing in the agreement contained makes the claim of any creditor any the less overdue and unpaid. The whole purpose of the agreement is that the indebtedness shall be paid, but that all shall be paid ratably. The contract not to sue, if it be such, is no doubt good as between the creditors, but even if, in terms, it created an extension of the due date, it is at least doubtful if the corporation, which gave no consideration, could claim its protection.

We are constrained to hold that the corporation was

insolvent, that the respondent bank had full knowledge of such solvency, and that its judgment was preferential under Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2].

This action was brought solely for the purpose of freeing the corporate real estate from the lien of the judgment. The bank was the judgment creditor, and at the time that the action was commenced against it, no payment had been received by it from any of the guarantors. Consequently, the bank was then the sole judgment creditor. None of the guarantors then had even an equitable interest in the judgment against the corporation. It appears that the bank then held ample collateral with which to pay the judgment in full; and only as that collateral, which had been deposited by the individual respondents, was converted into cash and applied on the judgment, could they or either of them become equitably interested in the judgment against the corporation. Hence, in the final analysis, the judgment in this action entered by the trial court permits these stockholder creditors to be preferred over the general creditors of the corporation.

"Equality is equity," and equity will not strain a point to create or uphold a preference. If the lien of the judgment be removed from the corporate assets, these individual respondents will be left exactly where they voluntarily placed themselves. When they guaranteed the debt of the corporation, they took no security from it. They became its general creditors, exactly as did all others who extended credit to the corporation without security. They were such general creditors at all times up to the time this action was brought against the bank. After the action was commenced, they obtained their interest in the judgment *pendente lite*. Consequently, a judgment against the bank would have bound them without their being made

parties. They were not necessary parties to this action.

 Some contention is made that there are still corporate assets undisposed of and undistributed which might conceivably finally produce funds which would pay all creditors in full. If that be so, of course no creditor will lose. But the statute, Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1], *et seq.*, does not contemplate that an action to set aside a preference must abide the final result of the settlement of the estate of the insolvent corporation. Such an action must be brought within six months and is maintainable if, in fact, a preference has been created within the statutory period while the corporation is insolvent. Proof of the insolvency and of the facts constituting the preference is all that is required. If a miracle should happen later and the assets should produce enough to pay all in full, then no one could be harmed by the loss of his preference.

Reversed, with instructions to enter judgment in accordance with the views expressed.

MILLARD, C. J., HOLCOMB, MITCHELL, and BEALS, JJ., concur.