[No. 27797. Department Two. August 19, 1940.]

H. H. HIGGINS *et al., Respondents,* v. W. H. DANIEL, *Appellant.*[1]

[1]Reported in 105 P. (2d) 24.

*E. K. Brown* and *William M. Clapp,* for appellant.

*Clinton & Southard,* for respondents.

BEALS, J.—Plaintiffs instituted this action against defendant, asking judgment upon a promissory note executed by defendant September 12, 1932, whereby defendant promised to pay, ninety days after date, to the order of First National Bank of Ephrata, Washington, the sum of five hundred dollars, with interest thereon at eight per cent per annum until paid. The complaint further alleged that, after the execution and delivery of the note, and prior to its maturity, the payee bank sold and transferred the same to the Federal Reserve Bank of San Francisco, Spokane branch; that thereafter the payee bank became insolvent and a receiver was appointed therefor; that the Federal Reserve Bank endorsed and transferred the note in question to the receiver of the payee bank, and that thereafter the note, together with other assets of the payee bank, was transferred from the receiver thereof

to Thomas A. E. Lally, a receiver of national banks; that, in due course of the receivership, Mr. Lally sold and endorsed the note in question to plaintiffs, who demanded judgment thereon, giving credit for $95.13, which had been paid on the note.

By his answer, defendant admitted the execution of the note and denied the other allegations of the complaint. For a first affirmative defense, defendant pleaded that, at the time of the execution of the note, he delivered to the payee bank a warehouse receipt for a considerable amount of wheat, which defendant had in storage in a warehouse owned and operated by the president and directors of the payee bank; that the owner of the warehouse was the owner of a majority of the stock of the payee bank and dominated and operated the bank for his benefit and for the benefit of his warehouse; that the wheat represented by the warehouse receipts was worth more than the amount of the note, that the value thereof was never applied in payment of the note, and that the wheat was lost through the negligence of the holders of the note, including plaintiffs. Defendant also alleged that plaintiffs did not acquire title to the note until after maturity, and with full knowledge of all the facts pleaded.

For a second affirmative defense, defendant alleged that, after the insolvency of the payee bank, one L. E. Johnson was appointed receiver thereof and took possession of its assets, under the direction of the comptroller of the currency of the United States; that the receiver invoked the jurisdiction of the superior court of the state of Washington for Grant county in aid of the receivership; that, by reason of the facts alleged, the United States district court, which later ordered the sale of the bank's assets, had no jurisdiction to enter orders for the sale of the assets of the bank; and

that the plaintiffs were not entitled to institute suit on the note.

Plaintiffs having denied the affirmative allegations of the complaint, the action was tried to the court sitting without a jury, resulting in findings of fact and conclusions of law in plaintiffs' favor, followed by a judgment in accordance therewith, from which defendant has appealed.

Error is assigned upon the making of several findings of fact; upon the entry of conclusions of law in respondents' favor; upon the entry of judgment against appellant; and upon the overruling of appellant's motion for a new trial.

By written stipulation, many facts were agreed to, the same to be considered by the court, in so far as competent, relevant and material to the issues. It appears that, for some time prior to the fall of 1932, Paul Patrick and Myrtle Patrick, his wife, were operating a storage warehouse for grain, at Ephrata, and that, during the same period, Mr. Patrick was president of the First National Bank of Ephrata, the payee named in the note above referred to, was a member of the board of trustees of the bank, and the owner of a majority of its stock; that, at the same time, Mrs. Patrick was also a trustee of the bank and a stockholder therein; and as stipulated, that Mr. and Mrs. Patrick "and their relatives controlled, dominated, and managed the affairs" of the bank.

It is admitted that, sometime prior to September 12, 1932, appellant deposited in Mr. Patrick's warehouse a quantity of wheat of greater value than the amount due on the note, receiving therefor warehouse receipts, which were pledged to the bank as security for the payment of the note. During the month of November following, a receiver was appointed to take charge of the warehouse, it appearing that Mr. Patrick had

converted to his own use most of the wheat which had been stored therein and for which warehouse receipts had been issued. Some dividends were later declared by the receiver of the warehouse, and appellant's share credited upon the note.

Patrick's unlawful conversion of the wheat is admitted, and, by this conversion, the warehouse receipts turned over to the bank as collateral security for the note were rendered practically valueless, save as they may have been protected by a bond. Apparently, Mr. and Mrs. Patrick had entire charge of the warehouse business, and appellant contends that, because of the fact that Mr. Patrick was president of the payee bank, and a trustee thereof, and because of other facts above referred to, the payee bank was bound by the acts of Patrick in misappropriating the wheat, and that, for this reason, appellant has a good defense to the promissory note.

It is doubtless the law, as contended by appellant, that a debtor who has pledged collateral as security for the debt, when sued on the secured obligation, may offset the value of the pledge if the same has been converted. *Taylor Co. v. Whitbeck,* 159 So. (La. App.) 187; *Ely-Walker Dry Goods Co. v. Karnes,* 223 Mo. App. 115, 9 S. W. (2d) 245; *Leonard v. Sehman,* 206 Iowa 277, 220 N. W. 77; 49 C. J. 990, § 231; 21 R. C. L. 686, § 47; Bowers, The Law of Conversion 62, § 77. This rule has been recognized by this court in the case of *Northern Bank & Trust Co. v. Slater, Watt & Co.,* 123 Wash. 528, 212 Pac. 1063. It does not appear, however, that the bank profited by Patrick's embezzlement of the wheat.

The rule referred to is not important here, unless the record shows that the act of Patrick in converting the wheat was the act of the bank. By the stipulation, it was agreed:

"(2) That Paul and Myrtle Patrick for several years prior to and up until November, 1932, operated a grain and apple storage warehouse at Ephrata, for the general storing of grain belonging to the public, under state license, and received for storage and issued warehouse receipts for such storage.

"(3) That the said Paul Patrick and Myrtle Patrick were husband and wife and during the time they operated the said warehouse they were the sole owners thereof, and that they conducted the business under the trade name of the Fred Schwab Commission Co."

■ Generally speaking, a principal is chargeable with notice of facts which are within the knowledge of his agent, acquired within the scope of the agent's authority. A well recognized exception to this rule is that, where an agent acquires information which it would be to his advantage to conceal from his principal, it is assumed that he did not impart such knowledge to his principal, and accordingly knowledge would not be imputed to the principal. This exception, however, is qualified by the rule that, if the agent is the sole representative of the principal, or the only person or means by which the principal acts, then the knowledge of the agent will be imputed to the principal, and the general rule applies, and not the exception thereto. 4 Zollman, Banks and Banking, 352, §§ 2322-3-4; 9 C. J. S. 431, § 203 *et seq.; Mays v. First State Bank,* 247 S. W. (Tex. Com. App.) 845. These questions were considered by this court in the recent case of *Post v. Maryland Casualty Co.,* 2 Wn. (2d) 21, 97 P. (2d) 173.

In the case cited, this court held that a fidelity bond, guaranteeing the honesty of an officer of the corporation, was rendered void by the officer's knowledge of his own acts of dishonesty, which knowledge was imputable to the corporation; and that the bond, having been procured by fraud, was void.

In the case at bar, the burden rested upon respondents to prove the allegations of their complaint, while appellant was required to affirmatively prove the allegations of his affirmative defenses. We have the benefit of two memoranda of the trial court, and, of course, of the trial court's findings, which refer to the memoranda.

■ Prior to the maturity of the note sued upon, both the grain warehouse and the bank were in receivership. Appellant contends that proceedings should have been taken against the warehouseman's bond required by statute, but it does not appear from the record in this case that there was any such bond. The case must stand or fall upon the evidence, and appellant's contention that a remedy should have been enforced against some unknown surety finds no support in the record. The record does show a credit on the note of two or three dividends, evidently realized from property of the warehouse.

The bank suspended operations during the month of November, 1932, and a receiver was appointed by the comptroller of the currency December 8th. The receiver operated under the direction of the comptroller of the currency through the superior court for Grant county. At some later date, Thomas A. E. Lally was appointed receiver, by the comptroller of the currency, to take charge of the affairs of the bank, superseding the former receiver, and after some time the proceeding was transferred to the United States district court.

The note here sued upon was, by order of the United States district court, together with other assets of the bank, sold by Mr. Lally and endorsed by him to respondents, whose ownership of the note is clearly shown by the record. Whether respondents are technically owners of the note in due course, or whether

they hold it as assignees after maturity, is immaterial. Upon the record, we find no merit to appellant's second affirmative defense, in which he alleged that respondents' title to the note in suit was defective. The evidence nowise supports this charge.

We shall now consider appellant's contention that he was entitled to judgment in his favor because of the merging of the personalities both of the warehouse and the bank in Patrick. Apparently, during, or shortly prior to, the month of November, 1932, Patrick converted much of the wheat in the warehouse to his own use. The receiver of the bank took possession of the bank's assets prior to the due date of the note. The record does not support appellant's claim of lack of diligence on the part of the successive receivers of the bank. If either receiver was negligent, the record does not show it.

The payee was a national bank. By Federal statute, 12 U. S. C. A., § 71, affairs of a national bank shall be managed by not less than five directors elected by the stockholders. By § 76, it is provided that the president of the bank shall be a member of the board of directors and shall act as chairman thereof. The president of a national bank has no lawful authority to act as sole manager of a national bank, being merely one member of the board of directors.

It was stipulated that the Patricks were sole owners of the warehouse business. The only evidence in the record as to the control exercised by Mr. Patrick over the bank is contained in the portion of the stipulation first above quoted, by which it was agreed that Mr. and Mrs. Patrick "and their relatives controlled, dominated and managed the affairs of the First National Bank." Considering this stipulation at its full face value, it does not require a holding that Paul Patrick controlled, dominated, and managed the business

affairs of the bank. Patrick's relatives may have exercised a large measure of control over the bank's affairs, and may have been entirely ignorant of Patrick's embezzlement of appellant's wheat. Appellant's allegation that the bank and the warehouse were practically one business, or that the president and directors of the bank were operating the warehouse, finds no support whatever in the record. Whatever the facts were, the record discloses no such blending of personalities as would justify a holding that the bank should be held responsible for Patrick's embezzlement of appellant's wheat. What Patrick did with the wheat, does not appear. It is not shown that the bank profited by his dishonest conduct as a warehouseman.

In the case of *German-American State Bank v. Soap Lake etc. Co.,* 77 Wash. 332, 137 Pac. 461, it appeared that the plaintiff bank was demanding judgment against several stockholders in a corporation, upon two promissory notes executed by the corporation, the bank also asking that certain stockholders be required to pay upon their stock subscriptions. It appeared that two of the defendants were the former president and cashier of the plaintiff bank, the defendants in the action contending that the knowledge of these officers as to the fraudulent structure of the corporation defendant barred the bank from recovering judgment against any of the stockholders. The judgment entered by the trial court in favor of the defendants was reversed, this court holding that the conduct of the bank's officers who were also stockholders in the corporation constituted no defense to the bank's suit, and that their conduct could not

". . . be taken advantage of by themselves or other stockholders of the remedy company without further proof of knowledge on the part of the bank than is disclosed by the record."

The court called attention to the fact that there was no showing as to knowledge on the part of other of the bank's trustees concerning the conduct of the bank's president and cashier and their relation to the corporation.

In the case of *Centralia State Bank v. Hackett,* 139 Wash. 394, 247 Pac. 463, this court held that the plaintiff bank was not estopped to maintain an action upon a written guaranty signed by the bank's president and two other persons, because of the fact that the president had, in connection with the matter, acted for his own interests. This court approved a ruling of the trial court to the effect that the bank was not bound by the agreement, in the absence of proof that the directors of the bank or some officer other than its president had knowledge of the agreement at the time the same was delivered to the bank, or at the time certain advancements were made.

These two cases, though not directly in point, have some bearing upon the questions here presented.

There is no proof that the directors and officers of the bank did not perform their usual and proper functions, or that its business was not conducted by and under the direction of its regular officers and agents.

It is evident that the trial court carefully considered and reviewed the evidence; and examination of the record convinces us that the trial court properly held that respondents had proved their case, and that appellant had not, by a preponderance of the evidence, proved the allegations contained in the affirmative defenses set forth in his answer, or produced any evidence which required the entry of a judgment in his favor.

The judgment appealed from is accordingly affirmed.

BLAKE, C. J., STEINERT, and JEFFERS, JJ., concur.